IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

---

|  |  |
|---|---|
| ANYA McPHERSON, individually and on behalf of all persons similarly situated, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | Civil Action No. 12-7761 (JBS/AMD) |
| v. | |
| CANON BUSINESS SOLUTIONS, INC., | **OPINION** |
| Defendant. | |

---

APPEARANCES:

Patrick F. Madden, Esq.
Shanon J. Carson, Esq.
Sarah R. Schalman-Bergen, Esq.
BERGER & MONTAGUE PC
1622 Locust Street
Philadelphia PA 19103
    Attorneys for Plaintiff

Philip R. Sellinger, Esq.
David E. Sellinger, Esq.
GREENBERG TRAURIG LLP
200 Park Avenue
PO Box 677
Florham Park, NJ 07932
    Attorneys for Defendant

**SIMANDLE, Chief Judge:**

**I. Introduction**

This putative class action alleges that Defendant Canon

Business Solutions, Inc. ("Canon" or "Defendant"),[1] violated the

---

[1]  The business entity is now known as Canon Solutions America, Inc.

Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, et seq.,
when it terminated employees or denied employment to job
applicants based on information contained in criminal background
reports without first providing the employees or applicants with
proper disclosure or an opportunity to dispute the accuracy of
the information. (Compl. ¶ 1.)

Before the Court is a motion by Defendant Canon for partial
summary judgment or, in the alternative, to strike the class
definition. [Docket Item 48.] At bottom, however, Canon seeks to
prevent Plaintiff from conducting discovery about terminations
and rejections of job applicants that occurred between two and
five years prior to the filing of the Complaint. The FCRA
permits claims to be brought within five years of an alleged
violation, provided that the claimant did not discover the
violation more than two years prior to filing the Complaint.
Here, the Complaint was filed on December 21, 2012, and
Defendant concedes that claims that arose on or after December
21, 2010, are timely, as their viability does not depend on when
a putative class member discovered an alleged violation.
However, it is Defendant's position that under no circumstances
can the Plaintiff certify a class to include those extra three
years (from December 21, 2007, to December 21, 2010), because
individual issues would predominate over common issues and such
a class would have ascertainability problems; namely, the Court

2

would have to hold mini-trials to determine whether each putative class member discovered the FCRA violation prior to December 21, 2010. Plaintiff argues that she deserves a chance to conduct discovery before class definition issues are decided, particularly because she has not yet moved to certify a class.

As explained below, it is premature to enter summary judgment at this time, and, accordingly, Defendant's motion will be denied without prejudice. The Court construes the motion as one to limit discovery under Fed. R. Civ. P. 26(b)(2)(C)(iii), and the Court will order limited discovery be conducted for the period from December 21, 2007, to December 21, 2010.

## II. Background

The facts of this case are drawn from the Complaint and, at this stage, are accepted as true. Plaintiff McPherson was hired as a temporary data entry employee in Burlington, N.J., by Canon in November 2011. On April 12, 2012, she applied for a permanent data entry position and authorized Canon to conduct a background check. On her application form, she indicated she had not been convicted of a crime within the last seven years.[2] Plaintiff began working as a permanent employee but two weeks later received a phone call from human resources informing her that her background check revealed a felony conviction that was more

_____

[2] There appears to be some dispute about whether the application asked Plaintiff to list all past criminal convictions, or just those in the prior seven years.

3

than a decade old. She was fired the same day. Plaintiff claims she had applied for executive clemency and was eligible to have her conviction expunged. She asserts that Canon never provided her a copy of the report, never described her rights under the FCRA prior to termination, and never gave her an opportunity to explain the conviction.

Plaintiff filed this Complaint on December 21, 2012. She alleges that Defendant willfully violated 15 U.S.C. § 1681b(b)(3) because she was not given "pre-adverse action disclosure" of a copy of the report obtained from the consumer reporting agency ("CRA") or a written description of her rights under the FCRA, and because she was not given "a pre-adverse action opportunity to dispute the accuracy of the reported information . . . ." (Compl. ¶ 18.) She seeks statutory damages under 15 U.S.C. § 1681n(a)(1)(A) and punitive damages under 15 U.S.C. § 1681n(a)(2), plus attorneys' fees and costs under 15 U.S.C. §§ 1681n & 1681o. (Id. ¶ 24.)

Plaintiff also brings claims on behalf of a nationwide class. She alleges that Canon has "a nationwide policy or practice" of obtaining CRA reports "and of taking adverse employment action . . . without providing employees and applicants with . . . pre-adverse action disclosure . . . and a pre-adverse action opportunity to dispute the accuracy of the

4

reported information." (Id. ¶ 21.) Plaintiff proposes a class

defined as:

> All employees and applicants of Canon Business
> Solutions residing in the United States who, at any
> time within five (5) years preceding the filing of
> this Complaint until the date of trial, suffered an
> adverse employment action based on information
> contained in consumer reports without receiving: (a)
> pre-adverse action disclosure containing a copy of the
> employee or applicant's consumer report obtained from
> the CRA and a description in writing of the employee
> or applicant's rights under the FCRA; or (b) a pre-
> adverse action opportunity to dispute the accuracy of
> the reported information before any adverse action was
> taken (the "Class").

(Id. ¶ 26.) As of this writing, Plaintiff has not filed a motion

to certify the class.

Defendant originally raised the present dispute in the form

of a motion for a protective order, seeking to limit discovery

to the two-year limitations period in the FCRA, 15 U.S.C. §

1681(p)(1). However, Magistrate Judge Donio decided, with the

agreement of the parties, that such a protective order would be

dispositive in effect (because it would necessarily depend on

finding that a class beyond the two-year period could not be

certified) and dismissed the motion without prejudice, directing

the Defendant to file a dispositive motion. [Docket Item 43.]

Upon review of the present motion and in a letter to the

parties, this Court voiced its reluctance "to construe the

motion as one for summary judgment, because Defendant seeks to

amend the class definition and not for the Court to enter a

partial, final judgment on the merits of any claims." [Docket
Item 64.] The Court characterized Defendant's request as one "to
narrow the class definition and thereby limit discovery." [Id.]
The Court stated that, to rule in favor of Defendant at this
stage, the Court would have to be "satisfied that no amount of
discovery could yield proof that a class or subclass could be
certified for those members who allegedly suffered injury more
than two years before the Complaint was filed." [Id.]

The Court requested additional briefing from the parties on
the issue of what discovery Plaintiff reasonably was due. The
Court directed Plaintiff to describe what discovery she seeks
"that could support a finding that the ascertainability and
predominance requirements of Rule 23 could be met for putative
class members who allegedly suffered injury more than two years
before the Complaint was filed." [Id.] The Court directed
Defendant to articulate or quantify "the burden Defendant
believes it would suffer by responding to Plaintiff's discovery
request under a five-year period." [Id.] The parties submitted
supplemental briefing, and the Court heard oral argument on
January 23, 2014.

To date, Defendant has provided discovery largely limited
to individuals whose reports contained information related to
criminal activity for claims arising after December 21, 2010.
Plaintiff has a pending motion before Judge Donio to compel more

discovery during the two-year limitations period. Plaintiff asserts she has not yet had the opportunity to take any depositions on Defendant's policies and practices related to FCRA compliance.

## III. Discussion

### A. Rule 26 discretion

Defendant's motion, although styled as a one for partial summary judgment or to strike the class definition, is properly re-characterized as a motion to limit discovery. Fed. R. Civ. P. 26(b)(2)(C)(iii) provides that the Court must, on motion or on its own, limit discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." In other words, the Court has discretion to weigh the need for discovery against the likely burden or expense to resolve the present dispute.[3]

The Advisory Committee Notes to the 2006 Amendment of the Federal Rules state that the "requesting party has the burden of

---

[3] Plaintiff suggests the motion should be construed as one under Fed. R. Civ. P. 12(f), but that provision permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The definition Defendant seeks to change fits none of these categories.

showing that its need for the discovery outweighs the burdens and costs of locating, retrieving, and producing the information."

**B. Statute of limitations & Rule 23 argument**

The FCRA permits plaintiffs to bring claims "not later than the earlier of-- (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p.

Defendant acknowledges that claims that accrued after December 21, 2010, are timely, but argues that the five-year window in the class definition "cannot be squared with the requirements of Rule 23(b)(3)," Fed. R. Civ. P., because the application of the wider limitations period will require individualized inquiries into when class members discovered or should have discovered Defendant's alleged misconduct. (Def. Mot. Br. [Docket Item 48-1] at 3.) Defendant argues that the Court "cannot certify a class that includes applicants whose discovery of an alleged violation predates the filing of the Complaint by more than two years because common issues would not predominate over individual issues in the determination of who is in the class." (Id. at 2.) For each claim arising between December 21, 2007, and December 21, 2010, Defendant argues, "the Court would be required to engage in an individual mini-trial,

requiring fact-specific proofs, to determine when that person knew or should have known of his or her alleged FCRA violation." (Id. at 2-3.) Put another way, "Plaintiff cannot demonstrate through common evidence that each and every individual who was not hired or who was hired and subsequently terminated based on the results of a criminal background report prior to December 21, 2010 is a member of the putative class." (Id. at 8.)

The key question for the Court is whether to conduct a Rule 23(a) ascertainability analysis or a Rule 23(b)(3) predominance analysis at this time, before the parties have completed discovery and before Plaintiff has submitted a motion for class certification.

### 1. Legal precedent

Plaintiff relies primarily on Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.3d 72 (3d Cir. 2011),[4] for the proposition that courts generally do not conduct a Rule 23 analysis until after discovery and after the plaintiffs move for class certification. (Pl. Opp'n at 14-16.) The Landsman court considered consolidated appeals of multiple class actions under the Telephone Consumer Protection Act, which provides a cause of action for individuals who receive unsolicited faxes. One of the

---

[4] The Third Circuit granted rehearing en banc in this case, but vacated that order after the U.S. Supreme Court decided Mims v. Arrow Financial Servs., LLC, 132 S. Ct. 740 (2012). Mims did not discuss Rule 23 analysis and class certification.

district courts had dismissed its class action prior to the class certification stage, because the court lacked subject matter jurisdiction. Landsman, 640 F.3d at 74 n.2. Diversity jurisdiction was lacking because certification would be improper under Rule 23, and, without certification, the plaintiff could not satisfy the amount-in-controversy requirement. Id. On appeal, the Third Circuit held that it was premature for the district court to delve into class certification before the parties had conducted discovery. Id. at 92-93.

The district court had reasoned that, even with additional discovery, certification would be denied because the ultimate issue turned on whether class members consented to receive faxes or had a prior business relationship with the defendant, and such questions could not be answered with common, class-wide evidence. Id. at 93. A divided Third Circuit panel disagreed, stating that "it is difficult to resolve without discovery whether there are factual issues regarding class members' business relationships with defendants or whether they consented to the receipt of faxes." Id. at 93-94. The court then cited Gene & Gene LLC v. BioPay LLC, 541 F.3d 318, 327-28 (5th Cir. 2008), in which the Fifth Circuit declined to rule on class certification before discovery, because there was a possibility of a "novel, class-wide means of establishing . . . lack of consent," where the question turned on "whether inclusion of the

recipients' fax numbers in a purchased database indicated their consent to receive faxes." Landsman, 640 F.3d at 94. The Third Circuit concluded that the parties should have the opportunity to develop the record because discovery "is necessary for the district court to conduct the 'rigorous analysis' it is staked with at this stage . . . ." Id. at 95. The Third Circuit also discussed "subclassing in lieu of decertification." Id.

For additional support, Plaintiff cites, among others, Myers v. MedQuist, Inc., No. 05-4608, 2006 WL 3751210 (D.N.J. Dec. 20, 2006), which states that "dismissal of class allegations at this stage should be done rarely and that the better course is to deny such a motion because 'the shape and form of a class action evolves only through the process of discovery.'" Id. at *4 (quoting Gutierrez v. Johnson & Johnson, Inc., No. 01-5302, 2002 U.S. Dist. LEXIS 15418, *16 (D.N.J. 2002)).

Defendant's strongest citations in response are Molina v. Roskam Baking Co., No. 09-475, 2011 WL 5979087, at *5-*6 (W.D. Mich. Nov. 29, 2011) (denying class certification of FCRA claims on the independent, sufficient ground that a five-year limitations period would raise individual questions that would predominate over common questions), and Holman v. Experian Info. Solutions, Inc., No. 11-180, 2012 WL 1496203, at *15 (N.D. Cal. Apr. 27, 2012) (limiting the class period to two years prior to

11

the filing of the complaint, because a larger class period would
require individual determinations that would predominate over
common issues). Both of those cases were decided after a period
of reasonable discovery and thus do not bear directly on the
issue in this motion, but they are worth some consideration when
analyzing the likely benefit of more discovery. At oral
argument, Defendant's counsel asserted that the parties had been
unable to find a single decision certifying an FCRA class for
the full five-year period.

In sum, the Third Circuit and district court decisions
counsel caution when deciding Rule 23 issues before a motion for
certification, except where it is clear that the plaintiff could
not meet class certification requirements. While the class as
currently defined ultimately may fail to meet the requirements
of Rule 23, as in Holman and Molina, the Court would be
premature in so ruling at this time.

Here, claims arising within five years of the complaint are
timely under the FCRA, except if the injured party had knowledge
of the violation more than two years prior to the filing of the
Complaint. In other words, all claims within the proposed five-
year definition are potentially timely. At this stage, the
record does not foreclose the possibility that evidence may
demonstrate a corporate policy of concealment, or at least lack
of notice to the affected individuals that negative criminal

background information had surfaced in the CRA reports, and could permit an inference that the putative class members, or a subclass of members, did not have knowledge of alleged violations before December 21, 2010. Further discovery may well shed light on a scheme to use and conceal CRA reports, or may buttress Defendant's position that putative class members were aware of Canon's use of background checks before December 21, 2010. Because "it is not clear that, as a matter of law," Plaintiff's class allegations must fail, the "parties should have the opportunity to develop the record on this issue." Landsman, 640 F.3d at 94. This Court must perform a "'rigorous analysis'" at the class certification stage and may need to "'delve beyond the pleadings to determine whether the requirements for class certification are satisfied.'" Id. at 93 (quoting In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 309, 316 (3d Cir. 2008)). Therefore, the Court, exercising its discretion, holds that Defendant's motion for partial summary judgment or to strike the class definition is premature, and Plaintiff is entitled to reasonable discovery to support her class claims. Defendant's motion is denied without prejudice.

At the same time, Plaintiff's right to discovery is not plenary. Rule 26 dictates that "the court must limit the frequency or extent of discovery" if the discovery is not proportional to the likely benefit of the evidence sought and

the burden imposed on Defendant. Fed. R. Civ. P.
26(b)(2)(C)(iii) (emphasis added); see also Goodman v.
Burlington Coat Factory Warehouse Corp., 292 F.R.D. 230, 232
(D.N.J. 2013) (discussing the "rule of proportionality" inherent
in Rule 26). The remaining inquiry for the Court is how much
discovery Plaintiff is due. To make this determination, the
Court will balance the likely benefit of the information sought
against the burden imposed on the Defendant, considering the
circumstances of this case.

### 2. Plaintiff's discovery requests & "likely benefit"

In her supplemental brief, Plaintiff explains that she
seeks evidence that "demonstrates that Defendant's class-wide
practice was to conceal from class members that the adverse
action was taken against them based on information contained in
their consumer report . . . ." (Pl. Supp. Br. at 2.)
Specifically, she seeks electronic data and hard copy discovery,
and to take Fed. R. Civ. P. 30(b)(6) depositions.

Plaintiff seeks electronic data discovery from Defendant's
applicant-tracking and HR databases and data from the two CRAs
that supplied background reports to Canon for the entire five-
year period. (Id. at 3.) She states that this data "will assist
plaintiff in ascertaining which individuals were terminated or
had their conditional offer withdrawn as a result of adverse
information contained in their consumer report." (Id. at 4.) She

states that "[a]dditional discovery regarding this data may demonstrate that Defendant's policies or practices were to conceal the reasons for the adverse action from the application or employee." (Id.) She does not describe what form "additional discovery" might take. Plaintiff also requests hard copies of employee and applicant files, which might indicate whether copies of pre-adverse or adverse action notices were sent. (Id.)

Finally, Plaintiff intends to take Rule 30(b)(6) depositions "regarding Defendant's policies and procedures for hiring, termination, and FCRA compliance, and will take depositions of employees with relevant information regarding the hiring process, including employees in Human Resources." (Id. at 5.) Plaintiff asserts that these depositions may reveal "whether there is evidence of a class-wide policy or practice to conceal from class members the reason for their termination or withdrawal of conditional offer of employment, such that class members would have no reason to know of the facts underlying the FCRA violation . . . ." (Id.)

Defendant counters that discovery already produced establishes "that during the entire 5-year limitations period, Canon's policy was to furnish applicants with pre-adverse action and adverse action letters." (Def. Supp. Br. at 2.) Defendant attaches internal legal memoranda from 2002 and 2012 that describe the procedures required to comply with the FCRA. (Def.

15

Supp. Br. Ex. A [Docket Item 66-1].) Defendant also attaches 28 redacted letters sent to 14 employees or job applicants -- all from 2011 or later -- that notify the recipients of an adverse employment action or that the company is reviewing a consumer credit report and providing a summary of rights under the FCRA. (Def. Supp. Br. Ex. B [Docket Item 66-2].) Defendant also notes that the facts of Plaintiff's own termination are consistent with Defendant being "transparent" with employees or candidates, because Plaintiff was informed that her background check revealed an undisclosed felony conviction. (Def. Supp. Br. at 2.)

Defendant further argues that the discovery sought would not enable certification under Rule 23, because even if the discovery yielded information to identify class members, no evidence would yield answers to the statute of limitations question on a class-wide basis. Defendant asserts that the CRA data does not indicate whether an employee or applicant was terminated, and the electronic HR database "is insufficient as a source for that information on a class-wide basis." (Id. at 5.) Defendant asserts that the only way "to determine who on the CRA databases was not hired or, if hired, was terminated" is "to search the database for only those names," and the only way to determine the reason for the adverse action is to review the hard copy files. (Id.) "Thus, absent an immense amount of

16

individualized applicant-by-applicant review and ultimately depositions of each and every applicant, expanding the scope of discovery to 5-years does nothing to advance the necessary SOL inquiry of whether individuals whose claims arose during the prior three years were aware of their claim." (Id.)

The only discovery that Plaintiff describes that might provide class-wide evidence of wrongdoing is deposition testimony about company policies and practices. While databases and files may aid in identifying which employees or applicants were terminated or not hired by Defendant, and which individuals had criminal hits on their background checks, Plaintiff does not explain how this information would answer the question of when each individual had knowledge that a background check was responsible, at least in part, for each termination or denial of employment. Plaintiff speculates that depositions could yield revelations that the company systematically deprived employees and applicants of their rights under the FCRA.

Rule 26 directs the Court to consider the "likely benefit" of this discovery, and, here, the likelihood that discovery would uncover evidence of a policy or scheme of concealing background checks to employees is low, in light of what is already known. At this time, the record does not contain any evidence that Canon did or did not give proper notices to employees or applicants between 2007 and 2010. At oral argument,

Plaintiff's counsel admitted that, to date, she has not
identified any individual who claims that Canon violated his or
her rights prior to December 21, 2010; McPherson herself is not
such a person, and Plaintiff's counsel stated that her basis for
alleging the existence of an illegal company policy or practice
is Plaintiff's own experience. The record does contain FCRA
notice letters from 2011 and later, and two legal memoranda from
2002 and 2012 distributed to Canon's human resource managers
detailing how to comply with FCRA procedures. While these
documents are not conclusive against Plaintiff at this stage,
they decrease the likelihood that class-wide evidence of a
concealment policy exists in a manner that would vitiate the
need for individualized inquiries about knowledge of the use CRA
criminal background information and permit certification of a
five-year, as opposed to two-year, class.

The Court now will consider the burden Defendant faces in
fulfilling these discovery requests.

### 3. Defendant's burden

Defendant asserts that the review of databases and
individual files for the two-year limitations period "required
months of work costing hundreds of thousands of dollars" and the
"same level of effort would be necessary to review data for the
prior three years." (Def. Supp. Br. at 5-6.)

Defendant describes the file-by-file research required to cross-check individuals in the CRA databases with HR records, and then the necessity to locate physical files to see if there is evidence that those individuals received proper FCRA notice. (Id. at 4.) The CRA and HR databases do not uniformly record the reasons for termination or withdrawal of a conditional offer of employment; some database entries may have such information in a "notes field" or equivalent field, but such information may not exist for other entries. (Pl. Supp. Br. Ex. B. [Docket Item 65-2] at 8; Ex. A. [Docket Item 65-1] at 1.) Therefore, according to Defendant, merely identifying which employees or applicants were not hired or not retained might require manual searches of files.

Defendant contends the depositions would be burdensome because "the deponent or deponents would have to become educated as to practices for the 5-year period, requiring review of the above-described records and interviews with other company personnel -- essentially the same level of review as necessary for production of the underlying documents." (Def. Supp. Br. at 6.) Defendant further asserts that "employment decisions are made by individual HR heads in the regional offices," and thus a deponent "would have to be debriefed" about the individual managers' practices during the additional three-year period.

(Id.) Defendant asserts that the preparation needed for deposition "would be extremely burdensome." (Id.)

Plaintiff replies that Defendant "vastly overstates the burden of producing the additional electronic data." (Pl. Supp. Reply at 3.) Plaintiff argues that Defendant previously stated it could retrieve discovery related to the two-year period within two weeks. (Id., citing Pl. Ex. B. [Docket Item 65-2] at 5-6, 10-11.) At oral argument, Defendant's counsel stated that the projections underestimated the amount of time and effort required to sift through the data, and that the actual cost and burden involved weeks of time and a six-figure outlay of costs. Plaintiff maintains that the Court should deny Defendant's motion as premature or, at the very least, permit Plaintiff to take only her 30(b)(6) deposition regarding the entire time period. (Id.)

Taking Rule 30(b)(6) depositions on corporate policies and practices of FCRA compliance would not have to be as burdensome as Defendant suggests. One or more Canon representatives from the relevant period may be able to speak to the existence or nonexistence of corporate policies to disclose or to conceal the role criminal background checks played in terminations or applicant rejections, during the five-year period or what guidance Canon headquarters provided to the regional HR managers -- all without the deponent conducting the exhaustive research

20

into all managers' individual hiring practices, as Defendant describes.

Limited discovery could be conducted without placing an unreasonable burden on Defendant while providing Plaintiff a reasonable opportunity to pursue her class allegations. Accordingly, because Plaintiff seeks evidence of a corporate policy to support her class allegations, the Court will permit Rule 30(b)(6) depositions of Canon representatives to explore whether Canon had corporate policies of concealing or revealing the role of criminal background checks in terminations or applicant rejections, or otherwise had a policy of promoting or ignoring compliance with the FCRA. Rule 30(b)(6) depositions may cover the existence of policies (including the legal memoranda of January 23, 2002, and December 31, 2012) related to FCRA compliance, how those policies were communicated to personnel heads, and whether Canon made efforts to determine if hiring managers operated in compliance with those policies. Rule 30(b)(6) representatives may testify to their knowledge of corporate policies, and would not need to be educated as to every hiring manager's individual practices. Plaintiff would not be permitted to inquire about individual hiring decisions in the 2007-2010 period.

Plaintiff also is entitled to limited discovery of information from the various databases that have already been

subject to discovery for the two-year limitations period. The
parties represented to the Court that they have agreed to
queries and data fields to limit the amount of data produced for
the two-year period. The Court will permit Plaintiff to seek the
equivalent information for the full five-year period, but using
a sampling protocol as described below to reduce the burden for
the 2007-2010 period. Such a data exchange shall be limited to
individuals who were terminated or not hired as a result of
criminal activity appearing on their background checks.[5]

To date, Canon has produced no evidence of written FCRA
notices given to terminated employees or unsuccessful applicants
for whom criminal background information in a CRA report was
utilized during the period from December 21, 2007, to December
21, 2010. On the other hand, Plaintiff McPherson has proffered
no particular support for her allegation that Canon violated the

---

[5] Plaintiff argues that the FCRA does not distinguish among type
of information in the report (i.e., criminal, bankruptcy,
consumer credit). However, Plaintiff's stated basis for class
allegations through December 21, 2007, is Plaintiff's own
experience, which involved the use of criminal background
information from a CRA in denying Plaintiff permanent
employment. It would be disproportionate to the scope of matters
in dispute to open discovery to all reasons for non-hiring or
termination beyond the use of criminal background information in
a CRA report. Plaintiff currently has no knowledge of any FCRA
violation involving termination or rejection based on non-
criminal information in a background report, let alone a class
representative who experienced such adverse employment action.
Therefore, any data discovery for the period between December
21, 2007, and December 21, 2010, will be limited to employment
actions related to criminal information in CRA reports.

FCRA in this regard. Plaintiff's proposal for wide-ranging discovery of Canon's files for the pre-December 21, 2010 period is unjustifiable by the present facts. For purposes of pre-class certification discovery, Plaintiff's showing with regard to this earlier three-year period is weak[6] and the burdens placed on Canon would be great, as described above. Therefore, only a small random sample of such files need be searched for the existence of FCRA compliance letters giving FCRA notice to the affected employee or applicant on criminal record grounds. A sampling protocol that (1) uses the methodology and keywords to search the databases to identify files that the parties have agreed to for the 2010-present files, then (2) limits the sample to criminal background CRA circumstances, and (3) further limits the manual search of such files to a fraction of such files, e.g., ten percent (10%) of the otherwise eligible names, would seem to strike the proper balance between Plaintiff's rather weak need for this information versus the Defendant's burden of identifying such files, searching for their whereabouts, manually inspecting them, and producing FCRA-compliant notices (or ascertaining lack of such notices) therein.

---

[6] As noted, Plaintiff herself does not have this issue since she is not in the pre-December 21, 2010 group, nor does Plaintiff proffer evidence that anyone in that group actually experienced an FCRA violation in their termination or non-hiring.

This random ten-percent sample for purposes of class certification discovery is calculated to be a reasonable proxy for the whole and to reveal whether there is any probative reason to believe that the first three-year class members were uniformly not given their FCRA notices. If the two-year search returned between 100 and 125 relevant files, as Defendant represents, a three-year search could be expected to return between 150 and 190 files; a ten-percent sampling of that yield would require physical search of between 15 and 19 files. Chances are that such a sample group will either disclose a uniform pattern of non-compliance (in which case the eventual commonality and ascertainability criteria might be satisfied), or of non-uniform compliance (in which case it becomes likely that individual questions of class-members' knowledge of an FCRA violation would predominate over common questions and ready ascertainability of class membership for the period would be doubtful), or of uniform compliance (in which case Plaintiff would lack a basis to proceed further for the pre-December 21, 2010 period). If, due to the practicalities of the search, this method is not producing a roughly representative sample or, on the other hand, is creating an excessive burden, the parties may agree to alter the scope of the search appropriately. The Defendant may employ any reasonable random method for selecting the ten-percent sample. The parties shall coordinate the

deadlines for this discovery with Judge Donio, in conjunction
with other discovery disputes.

## IV. Conclusion

Defendant's motion for partial summary judgment or to
strike the class definition is premature and will be denied
without prejudice. Limited discovery on the additional three-
year period between December 21, 2007, and December 21, 2010,
will be permitted consistent with this Opinion. An accompanying
Order will be entered.


**February 20, 2014**                          **s/ Jerome B. Simandle**
                                         JEROME B. SIMANDLE
                                         Chief U.S. District Judge